UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ADS PLUS ADVERTISING, INC.,

        Plaintiff,

        v.

ALAN AULT, et al.,

        Defendants.
_____

DECISION & ORDER

09-CV-6515P

## PRELIMINARY STATEMENT

Plaintiff, Ads Plus Advertising, Inc. ("Ads Plus"), has sued defendants Alan Ault, Robert Ault and Professional Auto Retailers, Inc. ("PAR") (collectively, "defendants") for breach of contract and unjust enrichment arising out of defendants' alleged failure to compensate Ads Plus for services rendered by it. (Docket # 1). Ads Plus contends that defendants engaged it to perform direct mail advertising, that it performed the work, but that defendants failed to compensate it fully for those services. (*Id.* at ¶ 7). Robert Ault has answered the Complaint; Alan Ault and PAR have neither answered nor appeared in this action. (Docket # 3).

Currently pending before this Court is Robert Ault's motion for summary judgment dismissing the action against him. (Docket # 20). According to him, the evidence establishes that Ads Plus contracted with PAR through its principal Alan Ault. (Docket # 20-9 at 1, 5-6). Robert Ault further maintains that no evidence exists to warrant piercing PAR's corporate veil and holding Robert Ault personally liable on its contract with Ads Plus. (*Id.* at 7-9).

Ads Plus opposes the motion on the grounds that the evidence demonstrates, or at least raises a genuine issue of disputed fact, that it entered into a contract with Alan and Robert Ault and not with PAR. (Docket # 27 at 4-6). According to Ads Plus, Alan Ault never disclosed that he was acting as an agent of PAR, rather than in his individual capacity. (*Id.*). Ads Plus further contends that Robert Ault represented to its president that he was Alan Ault's partner and would be handling all of the finances and, in fact, participated in certain of the payment transactions. (Docket # 26 at ¶¶ 7, 13-14, 17-22). These facts, Ads Plus maintains, are adequate to establish Robert Ault's liability for the amounts due under the contract or, alternatively, to raise disputed issues of material fact that preclude summary judgment. (Docket # 27 at 4-6).

For the reasons set forth below, Robert Ault's motion for summary judgment is denied.

## BACKGROUND

### A. The Formation of PAR and Robert Ault's Involvement in the Business

The following is a summary of the undisputed facts in this matter, except where otherwise noted. Robert and Alan Ault are brothers. (Docket # 20-3 at ¶ 2). According to Robert Ault, in January 2007, he loaned Alan Ault $140,000 to start a business known as Professional Auto Retailers, Inc., which was incorporated in Delaware the following month. (*Id.* at ¶¶ 3-4). No documentary evidence exists in the record, however, that PAR was in fact incorporated, and Robert Ault concedes that "to the best of [his] knowledge, no shares of stock in [PAR] were ever issued, no directors were ever elected, and no corporate meetings were ever held." (*Id.* at ¶ 8).

2

Robert Ault was associated with several of PAR's financial accounts. For example, Robert and Alan Ault opened a Bank of America bank account in the name "Robert and Alan Ault, Professional Auto Retailers Inc."; according to Robert Ault, the purpose of the account "was to receive payments directed to PAR, which were in turn to be transferred to [Robert Ault] in repayment of [the loan]." (*Id.* at ¶ 15). The account statements were mailed to Robert Ault at his residence in Palm Desert, California. (Docket # 29 at Exhibits ("Ex.") B and C). Robert Ault was also listed as a co-signer on an American Express credit account in the corporate name, although he claims he did not authorize his association with the account. (Docket # 20-3 at ¶ 10). Robert Ault also allowed Alan Ault to use Robert's personal American Express account for a single charge relating to the initiation of the business. (*Id.* at ¶ 12).

Robert Ault maintains that he was never involved in the operation or management, and has never been a shareholder or director, of PAR. (*Id.* at ¶¶ 8-9). On February 1, 2008, Robert Ault signed a letter formally resigning any association with PAR; he contends that the purpose of the letter was "to make it absolutely clear that [he] was in no way connected or involved" in the company.[1] (*Id.* at ¶ 20). According to Robert Ault, he never received any funds from the Bank of America bank account, nor issued any checks on the account. (*Id.* at ¶¶ 16-17). In addition, Robert asserts that Alan Ault repeatedly used Robert's personal American Express account to make payments on behalf of PAR without his consent or knowledge. (*Id.* at ¶¶ 13-14).

---

[1] A copy of the letter is not part of the record before the Court.

### B. Contractual Work Performed by Ads Plus

The pending lawsuit arises out of a series of transactions in which Ads Plus was engaged by one or more of the defendants to prepare direct mail advertising material. (Docket # 26 at ¶¶ 4-5). No written agreements were ever signed between the parties. Rather, the parties' contractual relationship was established principally as a result of phone calls and email communications. (Docket # 20-8 at 6).

According to Ads Plus, its first transaction with defendants occurred in May 2007 during a telephone conference between its president, Joanne Cook ("Cook"), and Alan Ault, during which Alan Ault engaged Ads Plus to "design, print and mail" advertisements for one of Alan Ault's customers. (*Id.* at 5). Ads Plus asserts that Robert Ault "participated in the transaction." (*Id.* at 6). Specifically, the documentary evidence establishes that on May 15, 2007, Robert Ault wired $21,155 from his personal bank account to Ads Plus. (Docket # 26 at ¶¶ 18-19; # 20-4 at 22). According to Ads Plus, it was engaged by defendants to provide similar services for nineteen subsequent advertising projects. (Docket # 20-8 at 6).

Documents submitted in support of the motion reveal that Cook and Alan Ault frequently communicated about payment for the services rendered by Ads Plus. (Docket # 20-7 at 9-76). Emails on the subject suggest that Ads Plus began to encounter difficulty in obtaining payment beginning in April 2008. (*Id.*). In response to Cook's requests for payment, Alan Ault generally either authorized payment through a credit card[2] or represented that he had mailed a check to Ads Plus. (*See, e.g., id.* at 13, 22, 27, 37, 44). Most of the emails sent by Alan Ault were sent from the address "ault@snet.net," although some were sent from "PAR@snet.net."

---

[2] The record does not disclose the account names on the credit cards that were used.

The financial relationship between the parties deteriorated over time. By June 17, 2008, according to an invoice Cook emailed to Alan Ault, approximately $103,495.55 was owed to Ads Plus. (*Id.* at 48). Alan Ault did not dispute the invoiced amount, but emphasized that he was having financial difficulties. (*Id.* at 63, 66, 71, 74).

### C. The Pending Lawsuit

Ads Plus commenced this action on October 9, 2009, after its unsuccessful attempts to collect on the outstanding invoices. (Docket # 1). The Complaint alleges that defendants owe Ads Plus $120,512 for advertising projects completed by Ads Plus between April and June 2008. (*Id.* at ¶ 10, Ex. A at 5). In support of its claims, copies of three checks that were returned for insufficient funds are attached to the Complaint. (*Id.* at ¶ 7 and Ex. A at 6-10). The checks were drawn on three different bank accounts, and each was signed by Alan Ault. (*Id.*). The first two checks, dated June 4 and 17, 2008, list the account holder as "Professional Auto Retailers Inc.," with an address located in Houston, Texas. (*Id.* at 6-7). The last check was dated June 27, 2008, in the name of "Robert & Alan Ault, Professional Auto Retailers Inc.," with a printed address of Robert Ault's residence in Palm Desert, California. (*Id.* at 8; Docket # 29 at Ex. C).

The parties do not dispute that Ads Plus provided the direct mail advertising materials requested by Alan Ault, nor do they dispute that Ads Plus was not fully compensated for its services. Rather, they dispute whether the contractual relationship was between Ads Plus and the individual defendants, as Ads Plus maintains (Docket # 27 at 1-6) – or between Ads Plus and PAR, as Robert Ault maintains (Docket # 20-9 at 4, 6). According to Robert Ault, the contractual relationship with the corporate defendant is evidenced by the fact that Ads Plus was

5

consistently paid by checks issued on PAR's accounts. (Docket # 20 at 5-6, ¶ 3; # 1 at Ex. A at 6-10). In addition, Robert Ault also emphasizes that Ads Plus hired an attorney to perform a credit check on PAR, rather than on the individual defendants.[3] (Docket # 20 at 6, ¶ 3; # 20-7 at 5; # 20-9 at 6).

In opposition, Ads Plus asserts that neither Robert Ault nor Alan Ault ever informed it that they were acting as agents for PAR. (Docket # 27 at 3, 5). According to Cook (the president of Ads Plus), Robert and Alan Ault led her to believe that they were business partners. (*Id.* at ¶¶ 10, 13). Cook affirms that she never received any correspondence or written agreement indicating that the contractual relationship was with PAR and believed that she was contracting with Alan and Robert Ault in their individual capacities. (*Id.* at ¶¶ 9, 13).

The parties also dispute Robert Ault's level of involvement in the transactions. Robert Ault asserts that he was not personally involved in any of the transactions between Ads Plus and Alan Ault, other than a single telephone conversation he had with Cook, during which he authorized the use of his personal American Express credit card to pay Ads Plus approximately $20,000. (Docket # 20-3 at ¶ 21). According to Robert Ault, he first learned that Alan Ault was doing business with Ads Plus when American Express contacted him as co-signor on the corporate American Express account that had been used to charge approximately $84,000 in payments to Ads Plus. (*Id.* at ¶¶ 9-10).

Cook counters that she "had numerous conversations and transactions with Robert Ault." (Docket # 26 at ¶¶ 6, 11). Cook further states that she first spoke with Robert Ault in

---

[3] The credit report was provided to Ads Plus on June 5, 2008 and indicated PAR was not located in the database of the credit reporting company. (Docket # 20-7 at 5).

May 2008, after Ads Plus began experiencing difficulty obtaining payment from Alan Ault. (*Id.* at ¶ 12; # 20-7 at 9-76). Cook contends that Robert Ault told her that he was Alan Ault's partner and would be handling all of the finances and that Alan Ault confirmed the representation. (Docket # 26 at ¶¶ 14-15). According to Cook, Robert Ault advised her that Ads Plus would be paid through the use of Robert's American Express account, and payments were in fact made in that manner. (*Id.* at ¶¶ 21-22).

In addition to the use of his personal American Express card, Robert Ault also wired $25,155 from his personal bank account to Ads Plus on May 15, 2007. (*Id.* at ¶¶ 18-19; # 20-4 at 22). Cook further alleges that on another occasion, Robert Ault sent Ads Plus a check in the amount of $30,000 to hold as a "good faith deposit on the work [Ads Plus] was performing for [d]efendants." (Docket # 26 at ¶ 17).

## DISCUSSION

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In reaching this determination, the court must assess whether there are any disputed material facts and, in so doing, must resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986); *Coach Leatherware Co. v. AnnTaylor, Inc.*, 933 F.2d 162, 166-67 (2d Cir. 1991). A fact is "material" only if it has some effect on the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248; *Konikoff v. Prudential Ins. Co. of Am.*, 234 F.3d 92, 97 (2d Cir. 2000). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could

return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see also Konikoff v. Prudential Ins. Co. of Am.*, 234 F.3d at 97.

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact, after which the non-moving party must come forward with sufficient evidence to support a jury verdict in its favor; the motion will not be defeated based upon conjecture, surmise or the existence of "metaphysical doubt" concerning the facts. *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). The party seeking to avoid summary judgment "must do more than make broad factual allegations and invoke the appropriate statute. The [party] must also show, by affidavits or as otherwise provided in Rule 56 . . . , that there are specific factual issues that can only be resolved at trial." *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995); *see also Driscoll v. Townsend*, 60 F. Supp. 2d 78, 80 (W.D.N.Y. 1999).

As the Second Circuit has explained:

> [T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution . . . . [I]t must be kept in mind that only by reference to the substantive law can it be determined whether a disputed fact is material to the resolution of the dispute.

*Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994).

Robert Ault contends that he is entitled to summary judgment on the grounds that Ads Plus cannot establish that he is individually liable for the amounts due under the contract because the contract was formed between Ads Plus and PAR, a corporate entity. (Docket # 20-9

8

at 6-7). He further maintains that no evidence exists to justify piercing the corporate veil. (*Id.* at 7-9). Ads Plus opposes the motion on the grounds that it formed the contract with Robert and Alan Ault in their individual capacities. (Docket # 27 at 4-6).

**A. Individual Liability for a Contract Entered into on Behalf of Corporate Entity**

Under New York Law,[4] "[a]n agent who signs an agreement on behalf of a disclosed principal will not be held liable for its performance unless the agent clearly and explicitly intended to substitute his personal liability for that of his principal." *Yellow Book Sales & Distribution Co. v. Mantini*, 925 N.Y.S.2d 646, 648 (2d Dep't 2011); *see also In re Estate of Gifford*, 535 N.Y.S.2d 154, 156 (3d Dep't 1988) ("an individual who signs a corporate contract and indicates the name of the corporation and the nature of his representative capacity on the contract is generally not subject to personal liability"); *Rick v. Richmond Sec. Servs., Inc.*, 958 N.Y.S.2d 63, 63 (N.Y. Civ. Ct. 2010) ("[w]hen a corporate officer signs an agreement in his or her corporate capacity, the corporate officer will not be held personally liable on the contract unless he or she personally binds him or herself"). In contrast, "an individual who signs a contract as an agent for an entity will be held personally liable on the contract if the agency relationship is not disclosed." *DeAngelis v. Timberpeg E., Inc.*, 858 N.Y.S.2d 410, 416 (3d Dep't 2008) (citing *McClure v. Cent. Trust Co. of New York*, 165 N.Y. 108, 128 (N.Y. 1900)); *see Argersinger v. MacNaughton*, 114 N.Y. 535, 539 (1889) ("an agent contracting in his own name,

---

[4] This action arises out of a contract that appears to have been negotiated and performed, in part, in New York, jurisdiction is based on diversity and the parties have both assumed that New York law applies. Accordingly, it is appropriate for the Court to apply New York law. *See Konikoff*, 234 F.3d at 98 (applying New York law to diversity action where the parties agreed that New York law governed the litigation); *Merrill Lynch Interfunding, Inc. v. Argenti*, 155 F.3d 113, 121 n.5 (2d Cir. 1998) ("Jurisdiction in this case is premised on diversity, and the parties both present arguments based on New York law, the law of the forum state. It is therefore appropriate for this Court to apply New York law.").

and failing to disclose the name of his principal at the time of making a contract . . . is personally liable for whatever obligation may arise out of the contract").

"The purpose of this doctrine is to make sure a party entering a contract knows precisely with whom it is dealing; it protects a party from 'unknowingly being required to do business with an entity incapable of meeting its contractual obligations.'" *Deutsche Bank Sec., Inc. v. Rhodes*, 578 F. Supp. 2d 652, 666 (S.D.N.Y. 2008) (quoting *UBS Sec., Inc v. Tsoukanelis*, 852 F. Supp. 244, 247-48 (S.D.N.Y. 1994)). Accordingly, "[t]he agent must disclose his principal at or before the time when the contractual agreement is made final." *Orient Mid-East Lines v. Albert E. Bowen, Inc.*, 458 F.2d 572, 576 (2d Cir. 1972) (internal quotation omitted).

"A principal is considered to be 'disclosed' if, at the time of a transaction conducted by an agent, the other party to the contract had notice that the agent was acting for the principal and of the principal's identity." *Safety Envtl., Inc. v. Barberry Rose Mgmt. Co.*, 942 N.Y.S.2d 200, 202 (2d Dep't 2012). "Knowledge of the real principal is the test, and this means actual knowledge, not suspicion." *Ell Dee Clothing Co. v. Marsh*, 247 N.Y. 392, 397 (N.Y. 1928). Further, an agent will not be relieved of liability simply because the contracting party had the means of ascertaining that the agent was acting on behalf of a principal; instead, the test is whether "a reasonable person in light of the surrounding circumstances would have understood that the agent was acting for a principal." *See Instituto Cubano De Estabilizacion Del Azucar v. SS Theotokos*, 155 F. Supp. 945, 948 (S.D.N.Y. 1957); *see Unger v. Travel Arrangements, Inc.*, 266 N.Y.S.2d 715, 723 (1st Dep't 1966) ("[i]t is not important how the customer acquired knowledge of the agency and of the existence of the principal; if he in fact knew thereof or in view of the facts known to him he should have known thereof without investigation, he may not

hold the agent responsible as a principal"). In other words, a party to a contract has no duty to investigate whether he is in fact dealing with an agent for an undisclosed principal. *See Safety Envtl., Inc. v. Barberry Rose Mgmt. Co.*, 942 N.Y.S.2d at 202 ("while each of the documents generated and maintained by the parties contained a corporate name in addition to the defendant's, they did not include or make clear that . . . the defendant was acting in the capacity of agent . . . [and] plaintiff did not have a duty to investigate whether the defendant was acting as agent"); *Tarolli Lumber Co. v. Andreassi*, 399 N.Y.S.2d 739, 740 (4th Dep't 1977) ("[t]he mere fact that the plaintiff had reason to suppose that defendants were acting as agents will not relieve them from liability . . . [because] [t]here is no requirement that the plaintiff, as a third party, make an investigation to obtain actual knowledge whether the defendants with whom it was dealing were, in fact, agents for an undisclosed corporate principal").

"The defense of agency in avoidance of contractual liability is an affirmative defense and the burden of establishing the disclosure of the agency relationship and the corporate existence and identity of the principle is upon he who asserts an agency relationship." *Courthouse Corporate Ctr. LLC v. Schulman*, 902 N.Y.S.2d 160, 162 (2d Dep't 2010) (internal quotations omitted); *see Judith Garden, Inc. v. Mapel*, 342 N.Y.S.2d 486, 489 (N.Y. Civ. Ct.) ("defendant's contention that she acted as an agent for a disclosed principal is an affirmative defense . . . and this places the burden upon her to establish she so acted in making the contract sued upon") (internal citation omitted), *aff'd*, 348 N.Y.S.2d 975 (1st Dep't 1973); *see Rick v. Richmond Sec. Servs. Inc.*, 958 N.Y.S.2d at 63 (party challenging individual liability "bears the burden of showing he was protected by his corporate status").

No genuine dispute exists in this matter that during the period 2007 through 2008 Ads Plus provided direct mail advertising services at the request of Alan Ault. As the communications between Cook and Alan Ault establish, Alan Ault agreed to pay for the services rendered by Ads Plus, and various payments were made to Ads Plus. Those payments constitute implicit admissions of the existence of a contractual relationship. *See Harris Corp. v. McBride & Assocs., Inc.*, 2002 WL 1677695, *4 (W.D.N.Y. 2002) (defendant's payments to reduce amounts owed constitute implicit admissions of contractual obligation; granting summary judgment regarding existence of contract where plaintiff proffered evidence of purchase orders, invoices and partial payments); *Bank of Am., N.A. v. Farley*, 2002 WL 5586, *5 (S.D.N.Y. 2002) (defendant's conduct in accordance with terms of agreement, including payments to reduce debt under agreement, establishes existence of contract between the parties); *see also Diversified Application Distribution Elec. Corp. v. A.C. Green Elec. Contractor, Inc.*, 643 N.Y.S.2d 385, 385 (2d Dep't 1996) (summary judgment appropriate where affidavit and invoices sent to defendant established "prima facie case that the defendant had failed to pay for goods it purchased from the plaintiff").

Although Robert Ault concedes the existence of a contract with Ads Plus (Docket # 20 at 5-6, ¶ 3 ("[t]he documents disclosed by plaintiff demonstrate that it entered into an agreement with [PAR]")), he denies that he may be held liable on the contract because he claims that Alan Ault was acting solely as an agent of PAR when he contracted with Ads Plus. As the party seeking to avoid individual liability on the contract, Robert has the burden to prove that Ads Plus knew or was informed that Alan Ault was acting as agent for PAR. *See Courthouse*

*Corporate Ctr. LLC v. Schulman*, 902 N.Y.S.2d at 162; *see Judith Garden, Inc. v. Mapel*, 342 N.Y.S.2d at 489.

The record before the Court fails to establish that Alan Ault disclosed to Ads Plus that he was contracting with it in his corporate capacity as principal for PAR. As an initial matter, there is no evidence before the Court that even establishes the corporate existence of PAR or whether it was a viable entity during the relevant time period. *See*, *e.g.*, *Rick*, 958 N.Y.S.2d at 63 ("a person who 'purport[s] to act on behalf of a corporation which [has] neither a de jure nor a de facto existence [is] personally responsible for the obligations which he incur[s]") (alteration in original) (quoting *Brandes Meat Corp. v. Cromer*, 537 N.Y.S.2d 177, 178 (2d Dep't 1989)). Second, Robert Ault has failed to adduce any evidence that Alan Ault informed Ads Plus that he was acting on behalf of PAR. Instead, Robert Ault asserts that use of the corporate checks to remit payments to Ads Plus constituted notice to it that it was dealing solely with a corporate entity. To the contrary, the use of corporate checks is insufficient to establish the required disclosure. *See Ardwin v. Englert*, 439 N.Y.S.2d 720, 721 (3d Dep't 1981) ("defendants are plainly not relieved of their individual liability to plaintiff merely because they used corporate checks . . . to make some payments to plaintiff on the contract"), *aff'd*, 56 N.Y.2d 936 (N.Y. 1982); *see Tarolli Lumber Co. v. Andreassi*, 399 N.Y.S.2d at 740 ("use by defendants of corporate checks to pay on the accounts billed to them as individuals does not charge the plaintiff with the required 'actual knowledge'").

In addition to the use of corporate checks, Robert Ault contends that the fact that Ads Plus requested the credit history of PAR proves that Ads Plus knew it was contracting with PAR and not Alan Ault. At best, such evidence creates a question of fact as to whether Ads Plus

13

understood that Alan Ault was acting as a corporate agent for PAR. Cook asserts that she never received any correspondence indicating that Alan Ault was acting as an agent of PAR and, in fact, believed that she was transacting business with Alan Ault in his individual capacity. No documentation exists in the record on this motion refuting that sworn assertion. In sum, disputes of material facts plainly exist regarding whether Alan Ault was acting solely as an agent for PAR, and, if so, whether Ads Plus knew that fact. Such disputes cannot be resolved at this stage and must be determined by a jury.[5]

### B. Liability of Individual that Represents Himself as a Partner

Of course, even if Ads Plus had contracted with Alan Ault in his personal capacity, it still must establish a basis to hold Robert Ault liable on the contract. Robert Ault contends that evidence of his liability is lacking because all of the transactions occurred between Alan Ault and Ads Plus. Ads Plus counters that Robert Ault was "part and parcel of many of the transactions giving rise to this case" (Docket # 26 at ¶ 6), including the wiring of funds to Ads Plus as early as May 2007. Two other transactions, the dates of which are unclear, involved Robert's authorization of the use of his credit card to make a payment to Ads Plus and his issuance of a check in the amount of $30,000 to hold as a "good faith" deposit. Although Cook concedes that she did not speak with Robert Ault for the first time until May 2008, she claims that he represented that he was Alan Ault's partner and would be handling the finances. Significantly, according to the invoice attached to the Complaint, the projects for which Ads Plus claims it has not been fully compensated were performed between April 30 through June 2008.

---

[5] In the event that Ads Plus is found to have contracted solely with PAR, additional factual disputes will need to be resolved concerning the applicability of the doctrine of piercing the corporate veil.

14

Under New York law, the doctrine of partnership by estoppel provides that a party who holds himself out to be a partner may be held liable by any party who relies upon that representation. N.Y. P'ship Law § 27 (McKinney). Specifically, New York Partnership Law Section 27 provides:

> When a person, by words spoken or written or by conduct, represents himself, or consents to another representing him to any one, as a partner in an existing partnership or with one or more persons not actual partners, he is liable to any such person to whom such representation has been made, who has, on the faith of such representation, given credit to the actual or apparent partnership.

*Id.* "[P]artnership by estoppel should not be lightly invoked and generally presents issues of fact." *Royal Bank & Trust Co. v. Weintraub, Gold & Alper*, 68 N.Y.2d 124, 129 (N.Y. 1986). Two elements are required to establish partnership by estoppel: first, that "sufficient indicia of partnership be presented to the injured party to constitute a representation that the partnership exists," *First Am. Corp. v. Price Waterhouse LLP*, 988 F. Supp. 353, 358 (S.D.N.Y. 1997) (citing *Royal Bank & Trust Co. v. Weintraub, Gold & Alper*, 68 N.Y.2d at 129), *reconsidered in part on other grounds* 1998 WL 148421 (S.D.N.Y.), *aff'd*, 154 F.3d 16 (2d Cir. 1998); second, that the injured party "relied on this representation to his or her detriment." *Id.* (citing *Milano v. Freed*, 64 F.3d 91, 98 (2d Cir. 1995)); *see Staples, Inc. v. W.J.R. Assocs.*, 2007 WL 3046352, *3 (E.D.N.Y. 2007) ("[c]ourts have construed 'given credit' [in N.Y. P'ship Law § 27] to mean that a party has relied on another party's representation regarding the existence of a partnership"). Application of the doctrine forecloses the party who has represented himself as a partner from denying the existence of the partnership for the purpose of avoiding the partnership's liability to the injured party. *See JLG Architectural Prods., LLC v. WDF, Inc.*, 928 N.Y.S.2d 750, 752 (2d

Dep't) (plaintiff estopped from denying existence of partnership to defeat defendant's claims where plaintiff had represented that it was a partner and defendant had relied on that representation), *lv. to appeal dismissed*, 18 N.Y.3d 854 (2011); *Hartford Accident & Indem. Co. v. Oles*, 274 N.Y.S. 349, 353-54 (N.Y. Sup. Ct. 1934).

Ads Plus contends that Robert Ault represented to Cook, its president, that he was Alan Ault's partner and would be handling the finances. This contention, if true, satisfies the first element necessary to estop Robert from denying the existence of a partnership between Alan Ault and himself. *See JLG Architectural Prods., LLC v. WDF, Inc.*, 928 N.Y.S.2d at 752 (written representation of partnership establishes prima facie showing of partnership by estoppel); *First Nationwide Bank v. Brookhaven Realty Assocs.*, 637 N.Y.S.2d 418, 422 (2d Dep't 1996) (written representation of partnership establishes prima facie showing of partnership); *Mulvey v. Hamilton*, 394 N.Y.S.2d 318, 319 (3d Dep't 1977) (evidence that party held himself out to be a partner and that plaintiff performed services in reliance on that representation sufficient to hold party liable to plaintiff). Even if Robert Ault disputes that he made this representation, such a dispute simply creates a question of fact to be resolved by a jury. *See Sitchenko v. DiResta*, 512 F. Supp. 758, 762 (E.D.N.Y. 1981) (conflicting affidavits of parties regarding whether defendant represented that partnership existed created question of fact precluding summary judgment).

In order to estop Robert Ault from denying the existence of a partnership, Ads Plus also must establish that there is at least a question of fact as to whether it relied upon Robert Ault's status as a partner when it undertook its contractual obligations. *Cf. Milano v. Freed*, 64 F.3d at 98 (no issue of fact where plaintiffs did not allege that they relied upon representation that

doctor was partner in medical group when deciding to take child to medical group for treatment); *Stochastic Decisions, Inc. v. DiDomenico*, 995 F.2d 1158, 1169 (2d Cir.) (no partnership by estoppel where plaintiff failed to allege that he "gave credit" to defendant on the basis of partnership representation), *cert. denied*, 510 U.S. 945 (1993); *White v. E. Nassau Med. Grp.*, 678 N.Y.S.2d 110, 110 (2d Dep't 1998) ("plaintiffs failed to submit evidence to establish that they knew of or relied on the appellant's purported public indicia of partnership when they sought treatment for the infant plaintiff"); *Ranieri v. Leavy*, 580 N.Y.S.2d 366, 367 (2d Dep't 1992) ("conduct or representations . . . that were not concurrent with or prior to the execution of the contract have no bearing on the issue of whether the defendants held themselves out as a partnership"). Although Robert Ault's representation, assuming it was made, occurred no earlier than May 2008, the projects for which Ads Plus allegedly has not been paid were performed in or after May 2008.

Thus, genuine issues of material fact exist as to Robert Ault's liability for any amounts due Ads Plus for work performed after May 2008. *See*, *e.g.*, *Four Star Capital Corp. v. Nynex Corp.*, 183 F.R.D. 91, 105-106 (S.D.N.Y. 1997) (issue of fact as to whether party represented itself as a partner and therefore could be liable for breach of contract); *Sitchenko v. DiResta*, 512 F. Supp. at 761-62 (issue of fact as to whether party held itself out as a partner and therefore could be liable for services performed by plaintiff in reliance). Cook asserts that she first spoke to Robert in May 2008 about difficulties in obtaining payments. Subsequent email communications between Alan Ault and Cook reveal that Cook expressed hesitancy to complete additional projects until the outstanding invoices were paid; she also advised Alan Ault that she was "overextended at the bank" due to Alan Ault's failure to pay the outstanding invoices.

(Docket # 20-7 at 40-42, 44, 46, 52). These allegations, coupled with Cook's assertions that Robert assured her that, as Alan's partner, he would be responsible for the finances and provided her with a $30,000 check to hold in "good faith," could lead a jury to conclude that Ads Plus relied upon Robert Ault's representation in continuing its contractual work with defendants. Accordingly, summary judgment is inappropriate.

## **CONCLUSION**

For the reasons discussed above, Robert Ault's motion for summary judgment **(Docket # 20)** is **DENIED**.

**IT IS SO ORDERED.**

  <em>s/Marian W. Payson</em><br>
MARIAN W. PAYSON<br>
United States Magistrate Judge

Dated: Rochester, New York
       March  1 , 2013